Argued November 24, remanded with instructions
December 23, 1970

IN THE MATTER OF THE ESTATE OF
DELORA L. PUGH, DECEASED.

WISHARD, *Respondent, v.* TURNER,
EXECUTRIX, *Appellant.*
478 P2d 438

*Donald G. Morrison,* Hermiston, argued the cause
and filed the brief for appellant.

*Gerald R. Pullen,* Portland, argued the cause for respondent. With him on the brief was Theodore D. Lachman, Portland.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

This is an appeal from a decree denying probate of the last will and testament of Delora L. Pugh. The proponent-appellant is the decedent's sister and co-executrix of the estate, and the contestant-respondent is a niece of the decedent.

Contestant filed a suit seeking to set aside the decedent's will on three grounds, namely, that the will was not properly executed, that the decedent lacked testamentary capacity, and that execution of the will was obtained by undue influence.

The trial court concluded that the decedent had testamentary capacity and that there was no undue influence exerted on the testatrix, but it held that due execution of the will was not established. Accordingly, it refused to admit the will to probate. There is no cross-appeal. Thus, the only issue presented for our decision is whether the will was duly executed as required by law.

The decedent's will was executed on July 10, 1967, in her home. It was prepared by Roy Skarloken, who was present at the time it was signed. It was a simple two-page instrument. The testatrix signed on the second page, as did the witnesses following the usual attestation clause.

Evidence in the case included the affidavits of the two subscribing witnesses presented with the will

for probate, their oral testimony at the trial, and written statements given by each subscribing witness to a private investigator some months prior to the trial. The affidavits, filed with the will shortly after Mrs. Pugh died, each recited that the testatrix, in the presence of both subscribing witnesses, "published the said instrument and declared the same to be her Last Will," and that at her request each affiant attested the will as a subscribing witness in the presence both of the testatrix and the other subscribing witness.

Six months later, each signed a statement given to a private investigator. One witness, Mrs. Bafus, a neighbor, stated in it that she was called by Mrs. Pugh to "come over to her house and witness a will." She did so. On arrival at Mrs. Pugh's house, the other subscribing witness was there, together with Mr. Skarloken, the man who had drawn the will. Mrs. Bafus subscribed the will there in the presence of Mrs. Pugh and the other witness after "Mr. Skarloken ask [sic] me when I came in the house, do I think Mrs. Peugh [sic] is in her right mind and if I thought so would I sign as a witness to a will." Mrs. Pugh made no statement while she was there. Mrs. Bafus left immediately after attesting the will. She said in that statement she did not know "if any other signatures were signed."

The second witness, Bonnie Skarloken, age 46, was a daughter of the man who drew the will. She had accompanied her father with the will to Mrs. Pugh's home to serve as a witness. In the statement she gave to the investigator she stated Mrs. Pugh was present when she signed the will as an attesting witness, which was after Mrs. Pugh signed the will. She also said that only the testatrix, her father and

herself were present when Mrs. Pugh and she signed the will.

At the trial both Mrs. Bafus and Miss Skarloken testified both were present when Mrs. Pugh signed her will and each was present when the other signed as attesting witness.

The will was executed in July 1967. Mrs. Pugh died in February 1968. Thus, it is governed by the provisions of the law prior to the adoption of the new probate code.

ORS 114.030 then stated:

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator.",

and ORS 42.030 provided:

"A subscribing witness is one who sees a writing executed, or hears it acknowledged, and at the request of the party thereupon signs his name as a witness."

Both these statutes had to be complied with. *Luper v. Werts and Smith*, 19 Or 122, 135, 23 P 850 (1890); *In re Demaris' Estate*, 166 Or 36, 58, 110 P2d 571 (1941).

In *Dodge v. Smith*, 243 Or 444, 413 P2d 431 (1966), the Supreme Court said:

"In the absence of testimony or other evidence to the contrary, the attestation clause in itself is sufficient proof that the will bore the signature of the testator at the time the witnesses' signatures were affixed to the document. In the case of *Skinner's Will*, 40 Or 571, 62 P 523, 67 P 951, after reviewing decisions from other jurisdictions in-

volving the failure of subscribing witnesses to recollect important facts concerning the execution of the will, we observed:

"'* * * These cases, of singular analogy to the one at bar, are sufficient to illustrate the principle upon which the fact of attestation and the due execution of a will may be established; and where, by reason of a failing memory, a witness is unable to recall the fact as to whether he or she saw the testator sign, or whether the testator signed first or last, or whether the witness was requested by the testator to attest the writing, the hiatus is supplied, in the absence of positive testimony to the contrary, by a presumption that the requirements of the law have been observed, which completes the proof and renders it sufficient upon which to direct a probate. And this is especially so where accompanied by an attestation clause reciting an observance of the necessary formalities.' 40 Or at 585.

"It is not necessary to the validity of a will that the testator sign it in the presence of the subscribing witnesses. It is sufficient if the evidence shows that the testator by any sign, motion, conduct or other attending circumstances gave the witnesses to understand that he had subscribed the instrument. Mere silence is not enough, but a statement, 'this is my will,' is sufficient. *Luper v. Werts and Smith*, 19 Or 122, 23 P 850; *In re Estate of Meier*, 190 Or 140, 224 P2d 572.

"ORS 114.030 does not require that the witnesses to a will sign in the presence of each other. *In re Estate of Neil*, 111 Or 282, 226 P 439." 243 Or at 446-47.

Although, as the trial court in its opinion pointed out, there are discrepancies not only between the respective statements given the investigator, but also between the affidavit, statement and oral testimony

of each of the subscribing witnesses, it is clear therefrom that each subscribing witness knew she was attesting Mrs. Pugh's last will and testament and the testatrix's signature thereto. Each also signed the will in the presence of the testatrix in accordance with her wishes. It was not necessary for the proponent to establish that the witnesses subscribed the will in the presence of each other. *In re Estate of Neil*, 111 Or 282, 226 P 439 (1924); *Dodge v. Smith*, supra. We think the essentials of a valid execution of the will were established.

The decree is set aside and the matter remanded with instruction to admit the will to probate.